J-S12023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CARNELL E. CHAMBERLAIN, | |
| Appellant | No. 978 EDA 2014 |

Appeal from the PCRA Order February 28, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0409611-2003

BEFORE:  BOWES, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                          **FILED MARCH 31, 2015**

Appellant, Carnell E. Chamberlain, appeals from the denial of his petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546.  We affirm.

We previously summarized the facts of the case as follows:

> On August 24, 2001, at approximately 9:30 p.m., 17 year old Curtis Cannon was shot dead in the street in the area of Clearfield and Potter Streets in the City and County of Philadelphia.  Apparently two groups of drug dealers doing business at opposite ends of the same street, Custer and Allegheny and Custer and Clearfield, were at odds with each other.  The two groups argued regularly over customers and threatened to "take out arms."  The victim, Curtis Cannon was seen that day selling drugs at Clearfield and Custer Streets.  On the night of August 24, 2001, Anna Vargas who lived at 3109 Custer Street, was sitting on her steps with her children when

---

[*]  Former Justice specially assigned to the Superior Court.

she heard two groups of males arguing. They were yelling about whose customers were whose. Ms. Vargas moved the children to a safer location, just inside her outer door. When the yelling stopped, she returned to her steps. Then she heard about 6 gun shots. Ms. Vargas put her children inside the house and closed her door. She looked out of her window and saw [A]ppellant and another male, later identified as the co-defendant, Kevin Burton (Burton), running up the street, past her window. She was familiar with both males, having regularly seen them in the neighborhood selling drugs. As he ran, Ms. Vargas watched [A]ppellant put a silver metallic looking gun under his shirt. [A]ppellant and Burton entered the house at 3112 Custer Street. Burton exited the house about five minutes later and entered an abandoned property further up the street. [A]ppellant was not seen coming out. Philadelphia Police officers arrived on the scene and began conducting their investigation. Ms. Vargas indicated to an officer that she had some information about the shooting however, she would not allow any officer to come to her home. Arrangements were made and Ms. Vargas was picked up that night a few blocks from her home and transported to the Homicide Division where she relayed her observations to Homicide Detective James Burke. Upon completion of the interview, Detective Burke gave Ms. Vargas his contact information in the event she needed to contact him further. On November 27, 2001, Ms. Vargas paged Detective Burke to tell him that [A]ppellant and Burton were in the neighborhood and gave a description of what they were wearing. Detective Burke was unable to respond at the time, but requested that plainclothes officers from the area, the 24th Police District, follow up on the information. The officers located [A]ppellant on the 3100 block of Custer Street and he was stopped for investigation. An officer called Ms. Vargas while at the scene and she confirmed that they had the right male. [A]ppellant was picked up and brought in to the homicide unit. He was printed, identified, then released. On December 15, 2001, Detective Burke and Detective Mosley met with Ms. Vargas to show her photographs of possible suspects. Ms. Vargas positively identified [A]ppellant and Burton from the photo spreads.

On the night of August 24, 200[1], at approximately 9:30 p.m., Tuere Rogers was walking down Clearfield Street from E Street, on her way to a cousin's house, when she saw two males later identified as [A]ppellant and co-defendant, Kevin Burton, standing, peeking around and acting "sneaky" near a white van.

They were standing very close, directly on each other[']s back, looking whispering and peeking out of the van. She observed Burton with a black gun which he appeared to be firing at her. He fired two shots in her direction and she ducked behind a car. She heard two more shots. The shooting subsided and Ms. Rogers came up from behind the car. At that point someone said that a boy had been shot and Ms. Rogers began walking down Potter Street to see what had happened. She again observed the same two males, [A]ppellant and Burton, peeking around the corner near a red brick house at 3100 Reach Street, still standing close and peeking out down Potter Street. Ms. Rogers was interviewed that night about what she had observed by Detective Burke of the Homicide Unit. On January 21, 2002, Ms. Rogers picked [A]ppellant and Burton from a photo spread.

Arrest warrants were prepared for [A]ppellant and Burton. Burton was apprehended shortly thereafter however, [A]ppellant eluded police for some time. Until on January 11, 2003, while investigating an unrelated shooting, Lieutenant George McClay questioned a gunshot victim at the Medical College of Pennsylvania Hospital (MCP). The victim later identified as [A]ppellant, gave his name as Tyrell Buffet. Detective McClay's investigation determined that the name, Tyrell Buffet, was likely an alias. This information was relayed to Homicide Detective George Fetters who went to MCP with a fingerprint technician to try and determine the identity of the shooting victim. During the fingerprinting procedure, [A]ppellant who had appeared unconscious, awoke, observed what was going on, and snatched his hand away from the technician. The technician continued his work. This time, [A]ppellant sat straight up in the bed, again pulled his hand away, then fell back down onto the bed. The prints were analyzed and [A]ppellant's identity was verified. [A]ppellant was arrested and charged with murder and related offenses. A motion to suppress was litigated and denied.

*Commonwealth v. Chamberlain*, 3353 EDA 2003, 876 A.2d 460 (Pa. Super. filed April 27, 2005) (unpublished memorandum at 1–3).

Following a multi-day jury trial, Appellant was convicted of first-degree murder, criminal conspiracy, possession of an instrument of crime ("PIC"), and a violation of the Uniform Firearms Act. On October 23, 2003, the trial

court sentenced Appellant to life imprisonment for murder, five to ten years of imprisonment for conspiracy, a three-and-one-half-to-seven-year term of incarceration for the firearms violation, and two and one-half to five years of imprisonment for PIC. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. This Court affirmed the judgment of sentence on April 27, 2005. *Chamberlain*, 3353 EDA 2003 (unpublished memorandum).[1] Our Supreme Court denied allowance of appeal on March 28, 2006. *Commonwealth v. Chamberlain*, 304 EAL 2005, 895 A.2d 1258 (Pa. 2006).[2]

On December 11, 2006, Appellant filed a *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition on June 1, 2007, and a supplemental petition on July 30, 2007. The instant PCRA court notes the following regarding the procedural history:

> On December 11, 2006, [A]ppellant filed a pro se PCRA petition claiming that his right to counsel was violated when the jury instructions on first and third degree murder were re-read without his counsel being present; that trial counsel was

---

[1] The issues before this Court on direct appeal were the sufficiency of the evidence, the composition of the jury, the trial court's refusal to charge the jury in accordance with *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954), improper closing argument by the prosecutor, and improper admission of prejudicial evidence. In addition, the trial court addressed the weight of the evidence in its Pa.R.A.P. 1925 opinion, on which we relied in affirming the judgment of sentence. Trial Court Opinion, 6/18/04.

[2] Appellant filed a *pro se* PCRA petition on September 28, 2005, which he subsequently withdrew on October 24, 2005, due to his pending petition for allowance of appeal in the Pennsylvania Supreme Court.

ineffective for failing to request a curative instruction when the prosecutor allegedly made improper statements during closing; that he was deprived of his right to a fair trial by several instances of alleged prosecutorial misconduct and trial counsel was ineffective for failing to object to the improper remarks; that trial counsel was ineffective for failing to file an oral motion in limine with respect to evidence used by the Commonwealth to show consciousness of guilt; and that trial counsel was ineffective for failing to present Evelyn Vasquez as a defense witness to contradict the testimony of other witnesses. PCRA counsel was appointed and filed an amended petition, incorporating all of [A]ppellant[']s pro se complaints and adding that the Court erred in re-instructing the jury on 1st and 3rd degree murder and accomplice/co-conspirator liability without [A]ppellant's counsel present in that [A]ppellant was deprived of counsel at a critical stage of the proceedings, and trial counsel was ineffective for failing to preserve the issue.[2] Thereafter, the Commonwealth filed a Motion to Dismiss the PCRA petition asserting that the claims were meritless. The Court reviewed the submissions of counsel, the record and the controlling law and determined that [A]ppellant was not entitled to PCRA relief. Following proper notice, [A]ppellant's petition was dismissed [on January 18, 2008].

> [2] The Court re-instructed the jury on first degree murder, including specific intent to kill and how it relates to co-conspirators and accomplices, and third degree murder in response to the jury's request to re-define each. (N.T. 10/22/03 pg. 140-144)

Appellant appealed the dismissal of his petition for relief [on January 29, 2008]. On September 29, 2008, in response to [A]ppellant's pro se "Second Petition Requesting Remand to the PCRA Court for a _Grazier_ hearing," apparently filed directly with [the Superior Court] and not served upon this Court, the Superior Court, ordered that a hearing pursuant to _Commonwealth v. Grazier_ be conducted.[3]

> [3] _Commonwealth v. Grazier_, 552 Pa. 9, 713 A.2d 81 (1998), holding that the waiver of the right to counsel at the appellate stage requires an on-the-record determination that the waiver is knowing intelligent and voluntary.

By correspondence dated October 29, 2008, the Superior Court was notified that, following the October 24, 2008 Grazier hearing, [A]ppellant's decision to waive his right to counsel was determined to be knowing intelligent and voluntary, and [A]ppellant was permitted to represent himself on PCRA appeal.

PCRA Court Opinion, 7/30/14, at 1–3.

On appeal to this Court, Appellant argued that his constitutional right to counsel was violated when the trial court re-instructed the jury on first and third degree murder and accomplice liability outside of the presence of his trial counsel. He also claimed that the trial court should not have permitted his co-defendant's counsel to stand-in for Appellant's trial counsel due to a conflict of interest, and that his trial counsel was ineffective for failing to object or request a mistrial. Because Appellant asserted in his *pro se* PCRA petition that allowing his co-defendant's counsel to stand-in for trial counsel posed a conflict of interest, and the claim was neither addressed by the PCRA court in its opinion nor developed in the record to permit consideration of this issue, we remanded the case for an evidentiary hearing on April 29, 2009. Moreover, because Appellant sought to raise additional claims challenging PCRA counsel's ineffectiveness, we concluded that such claims could be re-asserted upon remand in an amended PCRA petition and then addressed in the evidentiary hearing. ***Commonwealth v. Chamberlain***, 214 EDA 2008, 974 A.2d 1178 (Pa. Super. filed April 29, 2009) (unpublished memorandum). Our Supreme Court denied the Commonwealth's request for allowance of appeal on December 30, 2009.

***Commonwealth v. Chamberlain***, 305 EAL 2009, 987 A.2d 159 (Pa. filed December 30, 2009).

Appellant filed a post-remand PCRA petition on February 4, 2010, setting forth four issues to be addressed at the evidentiary hearing. He also requested appointment of counsel. The PCRA Court described the ensuing procedural history as follows:

> New counsel was appointed, however, on May 17, 2010, [A]ppellant requested that substitute counsel be appointed or that he be permitted to represent himself, citing irreconcilable differences effecting representation. On June 17, 2010, following a video status and Grazier hearing, [A]ppellant was again permitted to waive his right to counsel, appointed counsel was withdrawn, and [A]ppellant was ordered to submit all additional claims by July 16, 2010. Appellant submitted no additional claims but, in the interest of fairness, the Court again appointed new PCRA counsel to represent [A]ppellant for the impending evidentiary hearing [on August 17, 2010]. On April 11, 2011, new PCRA counsel filed a consolidated supplemental PCRA petition and memorandum of law, and subsequently, a second consolidated supplemental amended PCRA petition and memorandum of law [on May 18, 2012] . . . . On March 18, 2013, the Commonwealth filed a motion to dismiss denying the factual allegations and claims for relief in [A]ppellant's petition, and requesting that the court deny the petition without a hearing. The [c]ourt reviewed the submissions of both counsel and scheduled an evidentiary hearing. However, the proceedings in [A]ppellant's case were significantly delayed due to frequent bouts of serious physical incapacity suffered by PCRA counsel, which ultimately resulted in her withdrawal from representation on April 19, 2013. On July 16, 2013, present PCRA counsel was appointed to represent [A]ppellant at the ensuing evidentiary hearing. Counsel subsequently apprised the Court that he had reviewed the pleadings and consulted with [A]ppellant and that there were no additional claims for relief he wished to present . . . .

PCRA Court Opinion, 7/30/14, at 4–6.[3]

The PCRA court held the evidentiary hearing on October 18, 2013, wherein Appellant and his co-defendant's counsel testified. At the conclusion of the hearing, the PCRA court apprised counsel that any additional submissions or a request for further hearing should be submitted by November 22, 2013. Having received no further submissions, and following notice, the PCRA court dismissed Appellant's petition on February 28, 2014. Appellant filed a timely notice of appeal; both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

I.      Is [Appellant] entitled to an arrest of judgment on the charges of Murder in the First Degree and Criminal Conspiracy where, as here, the evidence is insufficient to sustain the verdict?

_____

[3] Appellant also filed a *pro se* petition for writ of *habeas corpus* in federal court asserting several claims of ineffective assistance of counsel on February 7, 2013, while his PCRA petition was pending. He asked the District Court for the Eastern District of Pennsylvania to excuse his failure to exhaust the claims in the Pennsylvania Courts due to the delay in adjudicating them. The federal court denied the petition for writ of *habeas corpus*, holding that while there were periods of inactivity, each time a hearing date approached, Appellant asserted reservations regarding his counsel or amended or supplemented the PCRA petition. Noting the instant PCRA judge's active role in moving the case as expeditiously as possible, the district court concluded there was no substantial showing by Appellant of the denial of a constitutional right requiring the issuance of a certificate of appealability, and denied the petition. **Chamberlain v. Lamas**, not reported in F.Supp.2d, No. 13-790, 2013 WL 4787349 (E.D.Pa. filed September 9, 2013).

II.    Is [Appellant] entitled to a new trial where, as here, the verdict on the charges of Murder in the First Degree and Criminal Conspiracy are not supported by the greater weight of the evidence?

Appellant's Brief at 3.

In this appellate brief, counsel for Appellant fails to reference any of the procedural history between the judgment of sentence in 2003 and the recent PCRA evidentiary hearing on October 18, 2013.  Counsel erroneously asserts that the present appeal is from the judgment of sentence and mistakenly claims that the PCRA court reinstated Appellant's appellate rights.  In his brief, he has failed to provide the proper order appealed from, which was the denial of Appellant's PCRA petition on February 28, 2014, and instead, maintains that the appeal is from the October 23, 2003 judgment of sentence.  Appellant's Brief at 2.  The two issues Appellant raises in his brief are issues that were raised in the direct appeal in 2005 and bear no relation to 1) the issue addressed at the evidentiary hearing, as ordered in our remand, 2) the issues stated in Appellant's post-remand PCRA petition filed on February 4, 2010, or 3) the issues set forth in PCRA counsel's supplemental amended PCRA petition filed on May 18, 2012.

The two issues raised on appeal are procedurally barred as they are either previously litigated or are waived because they were not presented in the Pa.R.A.P. 1925(b) statement.  ***Commonwealth v. Jones***, 811 A.2d 994, 1000 (Pa. 2002).  A claim is previously litigated under the PCRA if, *inter alia*, "the highest appellate court in which the petitioner could have had

- 9 -

review as a matter of right has ruled on the merits of the issue." *Commonwealth v. Chambers*, 807 A.2d 872, 881 (Pa. 2002). The sufficiency and weight of the evidence were addressed in the June 18, 2004 trial court opinion upon which we relied in affirming the judgment of sentence. *Chamberlain*, 3353 EDA 2003 (unpublished memorandum).

Moreover, the issues presented herein also are waived for failure to include them in the Pa.R.A.P. 1925(b) statement. Pennsylvania Rule of Appellate Procedure 1925(b)(4)(vii) provides, "Issues not included in the Statement [of Errors Complained of on Appeal] and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." *See also Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

We are cognizant, however, that counsel filed a Pa.R.A.P. 1925(b) statement that set forth the issue upon which we remanded for the evidentiary hearing, *Chamberlain*, 214 EDA 2008 (unpublished memorandum), and issues of prior counsel's ineffectiveness. In his statement pursuant to Pa.R.A.P. 1925(b), Appellant's counsel raised the following issues:

> 1.      That the Defendant should be remanded to the PCRA Court for a full evidentiary hearing where the Honorable PCRA Court erred where it dismissed [Appellant's] Amended PCRA Petition without a hearing, even though [Appellant], through previous counsel, Sondra Rodrigues, Esquire, had properly pled and would have been able to demonstrate that he was entitled to relief pursuant to the PCRA, where, in sum, [Appellant] raised the following meritorious issues through Ms. Rodrigues:

- 10 -

a)     Trial counsel was ineffective for failing to object to the Court giving a reinstruction to the jury without trial counsel being present;

b)     Previous post-conviction counsel was ineffective for failing to raise and preserve the issue that trial counsel was ineffective for failing to object to prosecutorial misconduct, where the Prosecutor referenced [Appellant's] prearrest and post-arrest silence;

c)     Previous PCRA counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness for not objecting to prosecutorial misconduct during closing argument where the Prosecutor stated and/or implied that the presumption of innocence ended prior to the end of deliberations.

Pa.R.A.P. 1925(b) statement, 4/17/14, at 1–2.   These are the issues the PCRA court considered, evaluated, and addressed in its Rule 1925 opinion. Pa.R.A.P. 1925 directs an appellant to identify in a concise manner the issues sought to be pursued on appeal, thereby allowing the trial court to prepare a legal analysis which is pertinent to those issues.   Thus, a trial court does not have to guess what issues an appellant is appealing, and meaningful appellate review is fostered.

Following our review of the record, we conclude that the cogent opinion filed by the Honorable Sheila Woods-Skipper, who also was the trial judge and the jurist who presided over the evidentiary hearing, provided a thoughtful and thorough analysis of the issues set forth in the Rule 1925(b) statement.   Therefore, if the Rule 1925(b) issues had properly been placed

before us, we would affirm on the basis of the PCRA Court's July 30, 2014 opinion.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/31/2015